## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JASMINE MHREZ,

     Plaintiff,

v.

RADIUS GLOBAL SOLUTIONS, LLC,

     Defendant.

Case No. 2:22-cv-02152

Judge Kevin McNulty

### <u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Respectfully submitted,

<u>/s/ Aaron R. Easley</u>
Aaron R. Easley, Esq.
Sessions, Israel & Shartle, LLC
3 Cross Creek Drive
Flemington, NJ  08822-4938
Telephone No.: (908) 237-1660
Facsimile No.: (877) 334-0661
Email: <u>aeasley@sessions.legal</u>
*Attorneys for Defendant,*
*Radius Global Solutions, LLC*

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 3

I.   INTRODUCTION ..................................................................................................... 6

II.  LAW AND ARGUMENT ......................................................................................... 8

   A.   The FDCPA As A Whole Envisions The Use Of Service Providers, Like RGS's Letter Vendor.................................................................................................................. 8

   B.   Section 1692c(b) Is Concerned With Individual Privacy Only Insofar As It Implicates Actual Harm To A Consumer's Reputation....................................................... 10

   C.   The FTC and CFPB Have Approved Of The Use Of Letter Vendors .............................. 14

   D.   Plaintiff's Interpretation Of § 1692c(b) Would Lead To Absurd Results By Banning Communications With Persons Critical To The Debt Collection Process ....................... 16

   E.   Even Read Alone And In Isolation, § 1692c(b) Does Not Prohibit The Use Of Letter Vendors ................................................................................................................ 17

      1.    A Letter Vendor Is Not A "Third-Party" For Purposes Of § 1692c(b) ..................... 18

      2.    RGS's Transmitting Data To Its Letter Vendor Is Not a "Communication" Under The FDCPA Because The Letter Vendor Was A "Medium" Through Which The Ultimate Communication, i.e., The Letter, Was Sent, And Plaintiff Does Not Allege Any Human Being Saw The Data ................................................................................................ 22

      3.    The Mere Transmission Of Data To A Letter Vendor Does Not Qualify As "In Connection With The Collection Of A Debt" Because It Is A Separate Communication From The Letter That Is Ultimately Sent............................................................................ 24

      4.    Section § 1692c(b), As Applied To Letter Vendors, Is An Overbroad Restriction on Commercial Speech ...................................................................................................... 27

III. CONCLUSION........................................................................................................ 29

CERTIFICATE OF SERVICE ........................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ........................................................................................18

*Barbato v. Greystone All., LLC*,
  916 F.3d 260 (3d Cir. 2019) ...........................................................................18

*Barclift v. Keystone Credit Servs.*,
  2022 WL 444267 (E.D. Pa. Feb. 14, 2022) ...............................................9, 12

*Bob Jones Univ. v. United States*,
  461 U.S. 574 (1983) ........................................................................................10

*Cavazzini v. MRS Assocs.*,
  2021 WL 5770273 (E.D.N.Y. Dec. 6, 2021).............................................12, 14

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980) ........................................................................................27

*Chickasaw Nation v. United States*,
  534 U.S. 84 (2001) ..........................................................................................20

*Ciccone v. Cavalry Portfolio Servs., LLC*,
  2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ...................................................9

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020) ...............................................................................13, 18

*Doe v. U.S. Immigr. & Customs*,
  490 F. Supp. 3d 672 (S.D.N.Y. 2020) ............................................................18

*Douglass v. Radius Global Solutions, LLC*,
  765 F.3d 299 (3d Cir. 2014) ...........................................................................11

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ..........................................................................................8

*Grand Light & Supply Co. v. Honeywell, Inc.*,
  771 F.2d 672 (2d Cir.1985) ............................................................................10

*Gregory v. Nationstar Mortg., LLC*,
  2014 WL 1875167 (D.N.J. May 9, 2014) .......................................................24

*Hall v. Sargeant*,
  2019 WL 1359485 (S.D. Fla. Mar. 26, 2019) ................................................23

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242 (2010) ..........................................................................................8

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  2019 WL 5578878 (M.D. Fla. Oct. 29, 2019)............................................7, 26

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  17 F.4th 1016 (11th Cir. 2021).............................................................9, 24, 25

*I.N.S. v. St. Cyr*,
  533 U.S. 289 (2001) ........................................................................................27

*Isaac v. NRA Grp., LLC*,
  377 F. Supp. 3d 211 (E.D.N.Y. 2019)..................................................................16, 17
*Khimmat v. Weltman, Weinberg & Reis Co., LPA*,
  2022 WL 356561 (E.D. Pa. Feb. 7, 2022).................................................................Passim
*King v. Burwell*,
  135 S. Ct. 2480 (2015) ...............................................................................................8
*Machleder v. Diaz*,
  801 F.2d 46 (2d Cir. 1986) .......................................................................................13
*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ..................................................................................................20
*Moskal v. United States*,
  498 U.S. 103 (1990) ..................................................................................................13
*NLRB v. SW Gen., Inc.*,
  137 S. Ct. 929 (2017) ................................................................................................20
*Nyanjom v. NPAS Solutions, LLC*,
  2022 WL 168222 (D. Kan. Jan. 19, 2022) ..........................................................12, 22
*Pitts v. Bayview Loan Servicing, LLC*,
  2017 WL 2311664 (D.N.J. 2017)..............................................................................25
*Pub. Citizen v. U.S. Dep't of Just.*,
  491 U.S. 440 (1989) ..............................................................................................8, 10
*Quaglia v. NS193, LLC*,
  2021 WL 7179621 (N.D. Ill. Oct. 12, 2021) ......................................................12, 22
*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ....................................................................................................8
*Ross v. Hotel Emps. & Rest. Emps. Int'l Union*,
  266 F.3d 236 (3d Cir. 2001) .....................................................................................10
*Simon v. FIA Card Servs., N.A.*,
  732 F.3d 259 (3d Cir. 2013) .....................................................................................26
*Sputz v. Alltran Fin., LP*,
  2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021).............................................................22
*TransUnion v. Ramirez*,
  141 S.Ct. 2190 ...........................................................................................................22
*Travers v. Fed. Express Corp.*,
  8 F.4th 198 (3d Cir. 2021).........................................................................................20
*United States v. Bert*,
  292 F.3d 649 (9th Cir. 2002)......................................................................................20
*United States v. Texas*,
  507 U.S. 529 (1993) ..................................................................................................18
*Viacom Int'l, Inc. v. FCC*,
  672 F.2d 1034 (2d Cir.1982).......................................................................................8
*Vilinsky v. Phelan Hallinan & Diamond, P.C.*,
  2015 WL 3767494 (D.N.J. 2015)..............................................................................25

Statutes

15 U.S.C. § 1692c(b) .................................................................Passim
15 U.S.C. § 1692e ............................................................................. 13
15 U.S.C. § 1692i .............................................................................. 16
15 U.S.C. §§ 1692b(5) ........................................................................ 9
15 U.S.C. § 1692c(a)(2) .................................................................... 22

Rules

Federal Rule of Civil Procedure 12(b)(6) ........................................... 6

Regulations

12 C.F.R. § 1006.1 ............................................................................. 15
16 C.F.R. § 314.4(d)(1)-(2) ....................................................... 19, 23
Debt Collection Practices (Regulation F),
  86 Fed. Reg. 5766-01 (Jan. 19, 2021) ........................................ 15
Statements of General Policy or Interpretation Staff Commentary on the FDCPA,
  53 Fed. Reg. 50,097 ..................................................................... 14

Other Authorities

2A C.J.S. Agency § 1 ........................................................................ 18
Restatement (Second) of Agency § 186 (Am. Law Inst. 1958) ........ 18
Restatement (Second) of Torts § 652D (Am. Law Inst. 1977) ......... 14
Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006) ......... 19
S. Rep. No. 95–382 .................................................................... 11, 12

# I.  INTRODUCTION

Defendant, Radius Global Solutions, LLC ("RGS"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Reply in Support of its Motion to Dismiss ("the Motion"), which seeks dismissal of the claim asserted by Plaintiff, Jasmine Mhrez ("Plaintiff").

Resolving this Motion requires an exercise in statutory construction, which, in turn, requires the Court to divine Congress's intent. Plaintiff asserts that in passing the Fair Debt Collection Practices Act (FDCPA), Congress intended to prohibit debt collectors from using letter vendors to undertake the rote task of printing and sending a collection letter. Plaintiff's theory is based exclusively on § 1692c(b) of the statute, which states:

> **Communication with third parties**
>
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (bold in original).

RGS's Motion acknowledges that, read literally and in isolation, § 1692c(b) arguably prohibits a debt collector from sending information to a service provider, like a letter vendor. However, a review of the statute as a whole and its history confirms this was *not* Congress's intent. Several additional FDCPA provisions *permit* the use of service

providers, even though communicating with these entities would violate § 1692c(b) under Plaintiff's proposed reading. The legislative history indicates Congress was chiefly concerned with debt collectors disclosing a consumer's indebtedness to her friends, family, neighbors, or employers, i.e., disclosures that threaten a consumer with real harm, like damage to her reputation or loss of employment. Nothing in the FDCPA, nor its legislative history, suggests Congress intended for § 1692c(b) to curb the use of "service providers," like letter vendors. Moreover, the FDCPA incorporates common law agency principles, under which communications with one's letter vendor "agent" are not "third-party" communications. Finally, the statute distinguishes between the "mediums" of communication—here, RGS's letter vendor—from the ultimate recipient of the communication—here, Plaintiff.

Plaintiff's Opposition cites extensively to two decisions, neither of which are binding on this court. Plaintiff cites *Khimmat v. Weltman, Weinberg & Reis Co., LPA,* 2022 WL 356561 (E.D. Pa. Feb. 7, 2022), which suffers from numerous flaws that are addressed below. Also, Plaintiff relies on the Eleventh Circuit's vacated opinions in "*Hunstein I*" and "*Hunstein II.*" These decisions were set aside to allow for *en banc* review. Thus, the operative decision is the district court's decision finding no violation. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 2019 WL 5578878 (M.D. Fla. Oct. 29, 2019), *rev'd and remanded*, 994 F.3d 1341 (11th Cir. 2021), *opinion vacated and superseded on reh'g*, 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated,* 17 F.4th 1103 (11th Cir. 2021).

For these reasons and as further explained below, the Court should conclude RGS

did not violate the FDCPA by using its letter vendor, grant this Motion, and dismiss the Complaint.

## II.  LAW AND ARGUMENT

### A.  The FDCPA As A Whole Envisions The Use Of Service Providers, Like RGS's Letter Vendor

Generally speaking, when the language of a statue is "plain," courts apply the "plain" language. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). However, whether statutory language is "plain" depends on "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). This is so, because "oftentimes the 'meaning— or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 135 S. Ct. 2480, 2483 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)); *see also Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 455 (1989) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on superficial examination.") (internal quotations omitted).

A particular word or phrase must not be read in isolation; a federal court's "duty, after all, is to construe statutes, not isolated provisions." *King*, 135 S. Ct. at 2488; *see also Viacom Int'l, Inc. v. FCC,* 672 F.2d 1034, 1039 (2d Cir.1982) ("the surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose").

Considering § 1692c(b) in the context of the FDCPA as a whole demonstrates that Congress did *not* intend to prohibit the use of service providers, like letter vendors. On the contrary, the FDCPA envisions the use of a variety of service providers to communicate with consumers, e.g., telegram operators (*see* 15 U.S.C. §§ 1692b(5); 1692f(5); 1692f(8)), telephone service providers (*see* §§ 1692f(5); 1692d(5)), and mail carriers (*see* §§ 1692b(5); 1692g(a)(4)(b)).

The FDCPA's authorizing the use of telegram operators is particularly telling. To send a telegram, a debt collector must transmit the information to be included in the telegram to the telegram operator. *See Hunstein*, 17 F.4th at 1045-46 (noting that § 1692f(5) "presupposes that debt collectors could use telegrams, even though that means the contents of the telegram would be transmitted through a telegram operator") (Tjoflat, J., dissenting). ***Yet under Plaintiff's reading of § 1692c(b), the act of transmitting information to a telegram operator would violate the FDCPA, making the telegram provisions unintelligible or mere surplusage.***

For this reason, numerous courts have concluded that reading the FDCPA to prohibit the use of service providers, like letter vendors, is contrary to Congress's intent. *See Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, *5 (E.D.N.Y. Nov. 29, 2021) (concluding that Congress's inclusion of "specific provisions of the FDCPA [which] condone the use of intermediaries to communicate with debtors" suggests § 1692c(b) does not prohibit communications with letter vendors); *see also Barclift v. Keystone Credit Servs., Inc.*, 2022 WL 444267, at *9 (E.D. Pa. Feb. 14, 2022) (noting same). The only way to square § 1692c(b) with these other provisions is to conclude that Congress did not intend

§ 1692c(b) to prohibit the use of service providers.

The Opposition fails to address these FDCPA provisions which endorse the use of service providers. Considered within the context of the FDCPA as whole, § 1692c(b) cannot be reasonably interpreted to prohibit debt collectors from using letter vendors.

**B. Section 1692c(b) Is Concerned With Individual Privacy Only Insofar As It Implicates Actual Harm To A Consumer's Reputation**

The polestar in any case turning on statutory interpretation is Congress's intent. *Ross v. Hotel Emps. & Rest. Emps. Int'l Union*, 266 F.3d 236, 245 (3d Cir. 2001). Even if the language of a statute is "plain," courts decline to apply the "plain" meaning where it is either at odds with Congress's intent or would lead to absurd results. *See Grand Light & Supply Co. v. Honeywell, Inc*., 771 F.2d 672, 677 (2d Cir.1985) ("[w]here the result of a literal interpretation of statutory language is absurd, or where the obvious purpose of the statute is thwarted by slavish adherence to its terms, we may look beyond the plain language") (citation omitted); *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983) ("[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute"). *see also Pub. Citizen*, 491 U.S. at 455 ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees . . . seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'").

When applying the "plain" language of the statute conflicts with Congressional

intent or would produce absurd results, courts decline to apply the literal interpretation and presume "the legislature intended exceptions to its language [that] would avoid results of this character." *Douglass v. Radius Global Solutions, LLC*, 765 F.3d 299, 302 (3d Cir. 2014). To determine whether a literal interpretation of a statute would be contrary to Congress's intent, courts invariably look to the legislative history.

The Senate Report sets forth the FDCPA's intended scope, namely, prohibiting "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, ***disclosing a consumer's personal affairs to friends, neighbors, or an employer***, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (1977) (emphasis added). The Senate Report goes on to state:

> "[T]his legislation adopts an extremely important protection . . .: ***it prohibits disclosing the consumer's personal affairs to third persons***. Other than to obtain location information a debt collector may not contact ***third persons such as a consumer's friends, neighbors, relatives, or employer***. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of jobs."

*Id.* at 4 (emphasis added).

Disclosing a debt to individuals who know the consumer (friends, family, neighbors, employers, etc.) threatens the consumer with real harm (damage to reputation, loss of employment, etc.). By contrast, the mere transmission of data to a letter vendor, without more, results in no articulable harm, and Plaintiff alleges none.

***Courts have repeatedly relied on the Senate Report in concluding that Congress did not intend § 1692c(b) to prohibit the use of service providers, like letter vendors. See,***

11

*e.g., Barclift*, 2022 WL 444267, at *9 (noting Congress's intent to prevent disclosures to those for whom the consumer's reputation matters, not to companies hired to perform tasks like printing and sending a letter); *Quaglia v. NS193, LLC*, 2021 WL 7179621, *3 (N.D. Ill. Oct. 12, 2021) (same); *Cavazzini v. MRS Assocs.*, 2021 WL 5770273, *6 (E.D.N.Y. Dec. 6, 2021) (same); *Nyanjom v. NPAS Solutions, LLC*, 2022 WL 168222, *5 (D. Kan. Jan. 19, 2022) (same).

In opposition, Plaintiff quotes the FDCPA's precatory language, which refers to "invasions of individual privacy," and argues RGS's transmittal to a letter vendor constitutes such an "invasion." *See* Opposition, at p. 9-10; *see Khimmat*, 2022 WL 356561, at *5. The context of the Senate Report's single reference to "invasions of privacy" exposes the flaw in Plaintiff's argument.

The Senate Report refers only *once* to "invasions of privacy." *See* S. Rep. 95-382, at 1699. Specifically, the report states: "Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." To be clear: the Senate Report's only reference to "invasions of privacy" appears as secondary and contingent to the prohibition against disclosures to friends, neighbors, relatives and employers. Nothing in the Senate Report—nor the FDCPA's precatory language—suggests Congress sought to prohibit a company's use of service provider, like letter vendors.

Further, Plaintiff's interpretation of § 1692c(b) runs contrary to the common law meaning of "invasion of privacy." Congress is presumed to legislate against the backdrop

of the common law, *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1016 (2020), and when Congress uses a common law phrase in a statute, the phrase is presumed to have the same meaning as under the common law. *Moskal v. United States*, 498 U.S. 103, 117 (1990). The common law recognizes four types of "invasion of privacy" torts: (1) "unreasonable publication of private facts;" (2) defamation; (3) "intrusion upon seclusion;" and (4) "appropriation of name or likeness." *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir. 1986).

Aside from "appropriation of name or likeness," the FDCPA prohibits conduct involving each type "invasion of privacy."[1] Thus, the Court need not stretch the term "invasion of privacy" beyond its common law meaning to give the term effect.

Critically, courts have repeatedly concluded that transmitting information to a letter vendor is not akin to an "invasion of privacy" by "unreasonable publication of private facts." An "unreasonable publication of private facts" occurs where: (1) the defendant "publicizes" facts about the plaintiff, i.e., where the defendant disseminates information to the "public at large" or in a way that it is "substantially certain to become public knowledge"; (2) the published facts are private facts, i.e., they relate to intimate details of one's life, like sexual relations and family quarrels; (3) the subject matter is not of

---

[1] For example, the FDCPA prohibits "defamation" through the provision prohibiting "false" statements about a debtor or a debt. *See* 15 U.S.C. § 1692e. The statute also prohibits "intrusions upon seclusion," like placing excessive calls to the consumer, § 1692d(5); calling at times known to be inconvenient to the consumer, § 1692c(a)(1); contacting the consumer after being notified he or she is represented by counsel, § 1692c(a)(2); contacting the consumer at the consumer's place of business, § 1692c(a)(2); and continuing to contact a consumer after the consumer has asked not to be contacted, § 1692c(c).

13

legitimate public concern; and (4) the publication would be highly offensive to a reasonable person. *See Cavazzini*, 2021 WL 5770273, at *5; Restatement (Second) of Torts § 652D (Am. Law Inst. 1977)).

Transmitting to a letter vendor data—which no human being actually saw—does not rise to the level of "publication" and is certainly not "highly offensive to a reasonable person." *See Cavazzini*, 2021 WL 5770273, at *4 (collecting cases and explaining that transmitting information to a letter vendor is not analogous to a public disclosure of private facts). The *Khimmat* decision did not even consider the common law meaning of "invasion of privacy," and the Court should refrain from following it.

In sum, the legislative history confirms that Congress intended § 1692c(b) to prohibit disclosures which threaten to harm the consumer's reputation. The mere act of transmitting data to a letter vendor, without more, threatens no such harm, and Plaintiff's claim should be dismissed.

## C. The FTC and CFPB Have Approved Of The Use Of Letter Vendors

As explained in the Motion, Congress tasked the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB") with interpreting and enforcing the FDCPA. In the 40+ years since the FDCPA was passed, the FTC and CFPB have repeatedly approved of the use of service providers, like letter vendors.

For example, the FTC's staff commentary states that a debt collector's "agent" may provide the disclosures required by the FDCPA and that "[a] debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communication to third parties." Statements of General Policy

or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50,097-02, 50,104 (Dec. 13, 1988). The CFPB, in its 2020 omnibus rulemaking, noted that 85% of debt collectors used letter vendors. Debt Collection Practices (Regulation F), 86 Fed. Reg. 5766-01, n.446 (Jan. 19, 2021) (codified at 12 C.F.R. § 1006.1, et seq). Rather than express concern over the widespread use of letter vendors, the CFPB authorized debt collectors to designate a letter vendor's address for consumer disputes and inquires. *Id.*, at 5818.

Plaintiff argues the FTC and CFPB guidance documents should be disregarded because: (1) they are not legally binding for purposes of judicial deference, and (2) they do not explicitly state that the use of a letter vendor is permissible under § 1692c(b). *See* Opposition, at p. 12-13. Plaintiff misinterprets the import of the guidance documents and reads them too narrowly.

RGS is *not* arguing that the FTC and CFPB's guidance is binding on the Court, such that the Court *must* apply the judicial deference doctrines. The Court must construe the FDCPA and reach its own decision. However, as the entities that have overseen the FDCPA since its passage, the FTC and CFPB's guidance is, at the very least, persuasive about the meaning of § 1692c(b).

And while the FTC and CFPB's guidance does not explicitly declare that a debt collector may communicate with service providers, like letter vendors, under § 1692c(b), the reasoning underlying the guidance implies as much. The FTC Staff Commentary authorizes communicating with a consumer through "agents," even though transmitting the information to be communicated by the agent, as a threshold matter, would violate § 1692c(b) under Plaintiff's reading. Further, letter vendors exist for the purpose of printing

15

and sending letters—that is what they do—and the CFPB's guidance documents plainly envision the use of letter vendors. It would be illogical to permit a debt collector to use a letter vendor while prohibiting the transmission of data necessary to print the letters.

### D. Plaintiff's Interpretation Of § 1692c(b) Would Lead To Absurd Results By Banning Communications With Persons Critical To The Debt Collection Process

According to Plaintiff, § 1692c(b) prohibits a debt collector from communicating about a debt with anyone except the consumer, the creditor, their attorneys, and consumer reporting agencies—full stop; no exceptions. This cannot be what Congress intended because it would lead to patently absurd results.

Nothing in § 1692c(b) (or the FDCPA as a whole) carves out an explicit exception for the courts or their staff. Thus, any communications with the courts would violate the FDCPA under Plaintiff's interpretation. This is obviously not what Congress intended, because, *inter alia*, the statute envisions the filing of collection suits. *See* 15 U.S.C. § 1692i. Further, Plaintiff's reading of § 1692c(b) would prohibit a debt collector from communicating with its employees. RGS, like the vast majority of debt collectors, is a juridical entity and necessarily requires the services of others to operate. At the same time, courts have held that debt collector companies are separate from the employees and officers who act on their behalf. *See, e.g., Isaac v. NRA Grp., LLC*, 377 F. Supp. 3d 211, 216 (E.D.N.Y. 2019) (collecting cases and holding that debt collector and their officers and employees may be held individually liable under the FDCPA), *aff'd*, 798 F. App'x 693 (2d Cir. 2020). Yet nothing in § 1692c(b) explicitly permits a "debt collector" to communicate with its employees and officers.

16

Plaintiff agrees that a construction of § 1692c(b) which would prohibit a debt collector from communicating with its agents would constitute an absurd result. *See* Opposition, at p. 15 (calling "preposterous" the construction of § 1692c(b) which would bar a debt collector's communications with employees "agents").[2] In an effort to side-step this reality, Plaintiff argues the Court should disregard this absurd result because she is not complaining about communications with an employee or about a debt collector using the telephone or the internet. This is a red herring. The fact is, this absurd result demonstrates that § 1692c(b) is not as "plain" as Plaintiff lets on and that the Court should consider the full statutory text, legislative history, and administrative guidance to determine what Congress truly intended to accomplish with § 1692c(b). All of these sources contradict Plaintiff's reading.

### E. Even Read Alone And In Isolation, § 1692c(b) Does Not Prohibit The Use Of Letter Vendors

Plaintiff's theory that Congress sought to prohibit the use of service providers, like letter vendors, through § 1692c(b) is belied by the statutory language as a whole, legislative history, and guidance from the federal agencies tasked with interpreting and implementing the statute. On top of that, two terms in § 1692c(b), itself, undermine Plaintiff's theory: the terms "third-parties" and "communication" "in connection with the collection of a debt." Each term militates against Plaintiff's theory, and at the very least, they indicate § 1692c(b)

---

[2] It bears noting that, contrary to Plaintiff's contention, plaintiffs *do* sue both debt collectors and their employees, officers, etc., with unfortunate regularity. *See Isaac*, 377 F. Supp. 3d at 212 (collecting cases and noting that an employee or officer may be held liable if he or she took an "affirmative action with respect to debt collection, such as where the individual defendant made repeated phone calls to the plaintiff").

is not as plain as Plaintiff argues.

### 1.   A Letter Vendor Is Not A "Third-Party" For Purposes Of § 1692c(b)

The heading for § 1692c(b) reads: "Communications with *third-parties*." (emphasis added). *See also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (noting that headings are part of the statutory text and may be considered to resolve doubt about Congress's intent). As noted above, the vast majority of debt collectors, including RGS, are juridical entities which can only act through hired persons. And under long-standing common law agency principles, a principal is deemed to have done itself what it does through an agent, such that communications with one's "agent" are not "third-party" communications. 2A C.J.S. Agency § 1; Restatement (Second) of Agency § 186 (Am. Law Inst. 1958).

Why does the common law matter? Congress does not "write upon a clean slate" each time it passes a statute. *Doe v. U.S. Immigr. & Customs Enf't*, 490 F. Supp. 3d 672, 692 (S.D.N.Y. 2020). Rather, Congress is presumed to legislate against the backdrop of the common law, and federal statutes are presumed to incorporate common law principles. *Comcast*, 140 S. Ct. at 1016. Thus, statutes "are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993).

Courts have uniformly held that the FDCPA incorporates common law agency principles and relied on these principles in interpreting the statute. *See, e.g.*, *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019). Under these principles, RGS's transmitting data to its letter vendor to undertake the rote task of printing and sending a

18

collection letter simply is not a "third-party" communication and is, therefore, not covered by § 1692c(b). To conclude otherwise requires some indication in the statute that Congress intended communications with a hired agent to be considered "third-party" communications. Yet *all* of the relevant authority goes the other way.

In opposition, Plaintiff argues RGS has not submitted any proof it exerts sufficient "control" over its letter vendor to establish an agency relation. *See* Opposition, at p. 11. A principal-agent relationship exists where: (1) the purported "agent" acts on the purported principal's behalf; and (2) where the principal exercises the right of control over the "agent's" conduct. Restatement (Third) of Agency § 1.01 (Am. Law. Inst. 2006). Commonsense dictates that RGS's letter vendor was acting on RGS's behalf when it printed and sent Plaintiff the relevant letter. After all, the letter is on RGS's letterhead.

As for the level of control: RGS is legally required to exercise control over its letter vendor. Under the FTC's Safeguard Rule, debt collectors are required, by law, to: (1) vet their service providers to ensure they are capable of safeguarding consumer information; (2) ensure that their service providers implement appropriate safeguards to protect consumer information; and (3) oversee their service providers to ensure continued maintenance of the required safeguards. 16 C.F.R. § 314.4(d)(1)-(2).[3]

Plaintiff's second argument against the vendor's agent status refers to the *expressio unius* canon of statutory construction. *See Khimmat,* 2022 WL 356561, at *4. Under this

---

[3] Plaintiff's attempt to compare RGS's transmittal of information to communicating with a consumer's roommate is a strawman: in contrast to its letter vendor, a debt collector has *no* control over a consumer's roommate. *See* Opposition, at p. 11.

canon, when Congress states a rule and provides exceptions, Congress is presumed to reject any unnamed exceptions by "negative implication." *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Plaintiff argues that, because § 1692c(b) specifically names attorneys—who are agents—Congress must have intended § 1692c(b) to prohibit communications with *any* other kind of agent.

Plaintiff applies the *expressio unius* canon far too rigidly so as to trump the statutory text as a whole, legislative history, and all other canons of statutory construction. However, the canons are simply guides to divining Congress's intent, not hard and fast rules, and a particular canon should be applied only where it is *reasonable* to presume it reflects legislative intent. *United States v. Bert*, 292 F.3d 649, 652 (9th Cir. 2002) (citing *Chickasaw Nation v. United States*, 534 U.S. 84, 91 (2001)).

"The force of any negative implication depends on context." *Marx*, 568 U.S. at 381. The *expressio unius* canon is particularly problematic because it presupposes Congress's silence as telling of its intent, even though that may not be the case. Hence, the canon "requires particularly careful application and 'applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded.'" *Travers v. Fed. Express Corp.*, 8 F.4th 198, 206 (3d Cir. 2021) (quoting *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017)). *See also Marx*, 568 U.S. at 381 ("We have long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.").

Nothing in the statutory text nor the legislative history of the FDCPA suggests that Congress was concerned about the use of service providers, generally, or letter vendors,

20

specifically, much less sought to prohibit their use through § 1692c(b). Further, nothing in the statutory text nor the legislative history suggest Congress sought to abrogate common law agency principles, including the principle that communications with agents are not "third-party" communications. To the contrary, the legislative history and the statute as a whole suggest Congress did *not* intend to do so. Accordingly, the *Khimmat* court's concluding that Congress intended to prohibit the use of letter vendors by "negative implication" goes too far and disregards too much.

Section 1692c(b) can reasonably be read to apply only to communications with those who qualify as "third-parties" under long-standing common law principles, such that communications with an agent would be excluded. Under such a reading, Congress would have no need to exempt communications with letter vendor-agents under § 1692c(b). Reading § 1692c(b) in this way acknowledges the legislative history, the statute as a whole, and the regulatory guidance and avoids the myriad absurd results inherent in Plaintiff's reading of § 1692c(b). And under such a reading, Congress's exempting attorneys from § 1692c(b)'s coverage does not require the extraordinary logical leap that Congress intended to prohibit the use of service providers across the board by "negative implication."

In sum, Plaintiff's reading of § 1692c(b) fails because it presumes Congress intended to exclude agency principles from the FDCPA. Under these principles, RGS's transmitting data to its letter vendor is not a "third-party" communication, and Plaintiff's claim fails.

2. **RGS's Transmitting Data To Its Letter Vendor Is Not a "Communication" Under The FDCPA Because The Letter Vendor Was A "Medium" Through Which The Ultimate Communication, i.e., The Letter, Was Sent, And Plaintiff Does Not Allege Any Human Being Saw The Data**

Section 1692c(b) applies only where the debt collector has "communicate[d]" with a third-party about a debt. 15 U.S.C. § 1692c(b). The statute does not define the word "communicate," but does define the word "communication," which is defined as the "conveying of information regarding a debt directly or indirectly ***to any person through any medium***." § 1692c(a)(2) (emphasis added).

A letter vendor is best understood as a "medium" through which a "communication" is sent. The letter vendor does nothing more than assimilate the information into a letter, and then print and send the letter. As countless courts have recognized, this is done through an automated process, such that no human being actually reads the information. *Nyanjom*, 2022 WL 168222, at *5 n.60 (quoting *Quaglia*, 2021 WL 7179621, at *3 and *Sputz v. Alltran Fin., LP*, 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021)).

Critically, Plaintiff does not allege that any human being at the letter vendor actually saw the information which was assimilated into a letter, printed and sent via automated process. It stretches commonsense to say that one has "communicated" information if no human being actually sees the "communicated" information.[4]

Plaintiff cites *Khimmat*, which concluded a debt collector's letter vendor did not

---

[4] Even the court in *Khimmat* suggested that if no human being actually saw the plaintiff's information, dismissal would be proper. *Khimmat*, 2022 WL 356561, at *5 (citing *TransUnion v. Ramirez*, 141 S.Ct. 2190, 2210, n. 6 (2021), in which the Supreme Court reasoned that if a consumer reporting agency's letter vendor merely processes information, but does not read it, the consumer necessarily suffers no injury for purposes of the FDCPA's sister statute, the Fair Credit Reporting Act).

qualify as a "medium" because the term covers only the "mechanical means of communication—a telephone, telegram, or, in more modern terms, email or file transfer." *See Khimmat*, 2022 WL 356561, at *3. Without explanation, the *Khimmat* court held that including the person providing those "mechanical means" within the meaning of "medium" would render § 1692c(b) "unintelligible." *Id.*

*Khimmat* failed to note that conveying information *through* a "medium" requires sending the information *to* the service provider who maintains the "mechanical means of communication," whether it be a telegram operator, telephone company, internet provider, or letter vendor. For example, when a person sends an email, the electronic data must arrive at and pass through not one but *two* different email servers; at each location, the email is susceptible of potentially being viewed by an individual with access. *See e.g., Hall v. Sargeant*, 2019 WL 1359485, *1-2 (S.D. Fla. Mar. 26, 2019) (explaining functioning of email for claim involving third party's access to email account). Yet, Plaintiff agrees that email constitutes a "medium" of communication under the FDCPA. *See* Opposition, at 15. Hence, the attempt to distinguish "mechanical means of communication" from letter vendors holds no water. *See Khimmat,* 2022 WL 356561, at *3.

*Khimmat* was also rash in holding that letter vendors differ from modern "wire-based, regulated utilities." *See id.*, at *6. Letter vendors *are* closely regulated by the FTC Safeguard Rule, under which debt collectors must ensure their service providers implement and maintain safeguards for consumer information. *See* 16 C.F.R. § 314.4(d)(1)-(2).

Because RGS's letter vendor closely resembles a "medium," *through* which communication occurs, and Plaintiff does not allege any human being actually saw her

23

information, the Court should conclude RGS's transmission does not qualify as a "communication" for purposes of § 1692c(b).[5]

### 3. The Mere Transmission Of Data To A Letter Vendor Does Not Qualify As "In Connection With The Collection Of A Debt" Because It Is A Separate Communication From The Letter That Is Ultimately Sent

Finally, § 1692c(b) only applies to those communications which are made "in connection with the collection of any debt." *See* 15 U.S.C. § 1692c(b). (For brevity, RGS occasionally refers to the "in connection with the collection of any debt" element as, simply, the "in connection" element.) The statute does not define the phrase, and courts have taken varying positions on what it means.

Some courts have construed the phrase as broadly as possible, concluding that a communication is "in connection" if it has any relation to the debt being collected. *See Khimmat*, 2022 WL 356561, at *4; *Hunstein*, 17 F.4th at 1034.

However, the majority of courts, including this Court, have construed the phrase more narrowly, focusing on factors like "the nature of the parties' relationship, whether the communication included a demand for payment, and the purpose and context of the communications *See Gregory v. Nationstar Mortg., LLC*, 2014 WL 1875167 (D.N.J. May 9, 2014) (letter that simply provided required information about the debt was not "in

---

[5] One could argue that it is irrelevant whether a human being actually saw the data because the letter vendor is a juridical "person" and RGS "conveyed" the data to the vendor. But this kind of reasoning places form over substance. If no human being saw the data, and the letter vendor merely processed the data to print and send a letter, the notion that the consumer is harmed is utter fantasy. Further, any such reasoning only illustrates how unworkable Plaintiff's theory is. Again, if a company is a separate and distinct "person" from those it hires to undertake its work, then § 1692c(b) would prohibit a debt collector from communicating with its employees, because there is no specific carve-out for employees. That simply cannot be what Congress intended.

connection" because "[l]etter's purpose was to convey information; its purpose was not to induce payment"); *Vilinsky v. Phelan Hallinan & Diamond, P.C.*, 2015 WL 3767494 (D.N.J. 2015); *Pitts v. Bayview Loan Servicing, LLC*, 2017 WL 2311664 (D.N.J. 2017).

The Court, here, should again follow the majority, factor-based approach. Applying this analysis, each factor militates in favor finding RGS's transmission of data does not satisfy the "in connection" requirement. As for "the relationship of the parties," RGS's "communication" was not between a debt collector and a debtor—or even someone close to the debtor, like a friend, neighbor, family member, or employer. It was between a debt collector and another company hired to perform a specific task.  The transmittal did not include a "demand for payment" in the logical sense of the phrase—RGS was not demanding payment from its letter vendor, as it might from a debtor.  True, the letter that the vendor ultimately printed and sent contained a demand for payment, but the letter and the underlying data transmission are separate "communications" and should be analyzed independently. Finally, the "purpose and context" of the transmission were simply the sending of data to an intermediary for the ministerial task of printing and mailing a letter.

In opposition, Plaintiff argues the court should reject the factor-based approach on the basis of *Hunstein* and *Khimmat.* Plaintiff is wrong.

The United States District Court for the Middle District of Florida took on this precise issue in *Hunstein*. There, the court rejected the plaintiff's argument that defendant's transmitting information to its letter vendor violated § 1692c(b). Following the factor-based approach, the court noted that the plaintiff "conflate[d] two communications: (1) Preferred's transmission of information to CompuMail for the purpose of generating a

letter to Hunstein; and (2) the actual debt collection letter, that was allegedly transmitted from CompuMail to Hunstein." *Hunstein*, 2019 WL 5578878, at *3. The court concluded that while the *letter* at issue was a "communication" "in connection" because it demanded payment, the underlying transmission of data was not. *Id.* The District Court decision, which remains operative following the vacatur of the panel decision, captures the majority factor-based approach.

The court in *Khimmat* also failed to acknowledge that the debt collector's transmittal of data to the vendor and the vendor's mailing of the letter constituted two separate events. *Khimmat*'s rejection of the factor-based analysis was also flawed for its misplaced reliance on a Third Circuit case. *Khimmat* cited *Simon v. FIA Card Servs., N.A.* for the proposition that a communication which makes a debt collection attempt "more likely to succeed" satisfies the "in connection" element. *See Khimmat*, 2022 WL 356561, at *3-4 (quoting 732 F.3d 259, 266 (3d Cir. 2013)). However, *Khimmat* failed to consider the full context in which the Third Circuit used the "more likely to succeed" language. In *Simon*, the letter at issue was sent directly by the defendant to the plaintiff, and the letter was an unabashed attempt to collect the debt. *Simon*, 732 F.3d 259 at 267. The "more likely to succeed" language is dicta that was only part of *Simon*'s overall factor-based analysis. *See id.,* at 266-67.[6]

---

[6] Further, it is a stretch to say that the transmission of data to the letter vendor, alone, made collection RGS's "attempts" "more likely to succeed." The transmission of data, alone, did nothing. It was only when the data was then assimilated into the letter and sent to plaintiff that a collection "attempt" even took place. Thus, one could say the transmission made an *"attempt" more likely*, but not that the transmission made the *"attempt" more likely to succeed*, in and of itself.

Here, the Court should employ the majority factor-based approach and conclude RGS's transmittal of data, which constituted a separate event from the actual mailing of the letter, was not "in connection with the collection of any debt" for the purposes of § 1692c(b).

### 4. Section § 1692c(b), As Applied To Letter Vendors, Is An Overbroad Restriction on Commercial Speech

As explained in the Motion, Plaintiff's reading of § 1692c(b) renders the provision an overbroad restriction on commercial speech. A restriction on commercial speech complies with the First Amendment only if: (1) the asserted governmental interest is "substantial;" (2) the disputed regulation directly advances that governmental interest; and (3) the regulation is no more extensive than necessary to serve that interest, taking into account other alternatives. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564-66 (1980). And where a provision is susceptible of multiple interpretations, some of which raise constitutional concerns, and others that do not, courts are to interpret the provision in a way that avoids constitutional concerns. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001).

Here, the government's interest is protecting consumers from the embarrassment and harm to reputation that comes from a consumer's friends, family, neighbors, employers, etc., being made aware of the consumer's indebtedness. Reading § 1692c(b) to prohibit the use of letter vendors does not advance this interest at all, let alone do so on a narrowly tailored basis.

In opposition, Plaintiff argues that reading § 1692c(b) to prohibit only

communications with those affecting a consumer's reputation, like a friend or neighbor, would be unworkable. In support, Plaintiff argues that it is impossible to define who qualifies as a consumer's "friend," "neighbor," or "relative." *See* Opposition, at p. 17. Plaintiff also argues that, according to RGS, placing a billboard in Times Square announcing that a consumer owes a debt would comply with § 1692c(b) so long as the consumer's "friends," "neighbors," "relatives," or "employer" did not see the billboard. *See id.*, at p. 18. Plaintiff misses the point entirely.

RGS is not asking the Court to consider whether a disclosure to an acquaintance, rather than a "friend," qualifies, or how near one must live to qualify as a consumer's "neighbor," such that the disclosure may be reasonably presumed to threaten the consumer's reputation. Nor is RGS asking the Court to conclude that a plaintiff must actually prove reputational harm to recover under § 1692c(b). RGS's argument is far narrower.

The facts, here, are that RGS transmitted data to its letter vendor to undertake the rote task of printing and sending a collection letter, and Plaintiff does not allege any human being at the letter vendor saw her information, much less that the transmission itself threatened her with any real harm, whether it be harm to her reputation, or otherwise. The question, therefore, is whether Congress's prohibiting such a transmission furthers the goal of protecting a consumer's reputation—it does not—and, even if it furthers this goal, whether the restriction goes farther than is reasonably necessary—it obviously does.

Simply put, if Congress's goal is protecting a consumer's reputation, outright banning the use of service providers, like letter vendors, goes much too far.

### III.  CONCLUSION

Plaintiff's theory that RGS violated the law by using a letter vendor fails as a matter of statutory construction, and the Court should grant this Motion and dismiss Plaintiff's Complaint.

Dated: May 9, 2022  Respectfully submitted,

/s/ Aaron R. Easley
Aaron R. Easley, Esq.
SESSIONS, ISRAEL & SHARTLE, LLC
3 Cross Creek Drive
Flemington, NJ  08822-4938
Tel.: (908) 237-1660
Fax: (877) 334-0661
Email: aeasley@sessions.legal
Attorneys for Defendant,
Radius Global Solutions, LLC

### CERTIFICATE OF SERVICE

I certify that on May 9, 2022, a copy of foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.

/s/ Aaron R. Easley
Aaron R. Easley, Esq.